IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:23-cv-00653

| | |
|---|---|
| KELLY HENKEL, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) COLLECTIVE ACTION<br>) COMPLAINT<br>) |
| SCIENTIFIC CALIBRATION, INC., | )<br>) |
| Defendant. | )<br>) |

Plaintiff, Kelly Henkel ("Henkel" or "Plaintiff"), individually and on behalf of all other similarly-situated employees, by and through her counsel, bring claims as a Collective Action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), against Scientific Calibration, Inc. ("Scientific Calibration" or "Defendant"), and alleges, upon personal belief as to herself and her own acts, and as for all other matters, upon information and belief, and based upon the investigation made by their counsel, as follows:

## NATURE OF ACTION

1. Henkel contends that Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA") by knowingly suffering and/or permitting Henkel and the putative Collective members ("Collective") to work in excess of 40 hours per workweek without properly compensating them for all overtime hours worked.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in

any Federal or State court of competent jurisdiction." Henkel has signed an opt-in consent form to join this lawsuit. (Exhibit 1).

3. This Court has jurisdiction over Henkel's claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA.

4. This Court has personal jurisdiction because Defendant conducts substantial business in Wake County, North Carolina, which is located within this judicial district.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Wake County, North Carolina, which is located within this judicial district.

## PARTIES

6. Henkel is a resident of Raleigh, North Carolina and worked for Defendant as a Pipette Calibration Service Technician ("Technician").

7. Scientific Calibration provides sales and service of scientific instruments to customers located throughout the United States.

8. Defendant's corporate headquarters is in Cary, North Carolina.

9. At all times relevant, Defendant was Henkel's "employer" as defined by the FLSA, 29 U.S.C. § 203(d) and was actively engaged in the conduct described herein. Throughout the relevant period, Defendant employed Henkel and similarly-situated employees within the meaning of the FLSA.

10. At all times relevant, Henkel and similarly-situated employees were covered employees engaged in interstate commerce within the meaning of the FLSA.

2

## FACTS

11. Henkel and the Collective are individuals who work and have worked for Defendant as Technicians during the three-year statutory period preceding the filing of this Complaint. Amongst other things, Henkel and the Collective all share similar training, job descriptions, job tasks, and are subject to the same compensation and time recording policies and procedures.

12. Henkel and the Collective were all paid an hourly rate of pay and non-exempt employees within the meaning of the FLSA.

13. Defendant hired Henkel as a Technician on or about December 16, 2019. Henkel's employment terminated on October 5, 2023.

14. Throughout the duration of her employment with Defendant, Henkel and the Collective received biweekly paychecks from Defendant that did not properly record or compensate them for all overtime hours that they worked.

15. Henkel and the Collective performed their job duties at Defendant's Carey, North Carolina location and at Defendant's customers' places of business.

16. Technicians perform their job duties with specialized tools and testing equipment that is owned and provided by Defendant.

17. When working onsite at Defendant's Carey, North Carolina location, Defendant established normal working hours for Technicians beginning at 8:00 a.m. and ending at 5:00 p.m., with a 1-hour unpaid lunch period.

18. When working at customers' locations, Technicians generally travel by airplane. Defendant made all travel arrangements for Technicians and booked flights that typically departed

3

from Raleigh-Durham International Airport between 5:30 a.m. and 7:00 a.m. Similarly, Defendant typically booked return flights with similar departure times.

19. Defendant prohibited Technicians from bringing company-owned tools and testing equipment to their homes. On days Technicians were scheduled to travel to customers' locations, before traveling to the Raleigh-Durham International Airport, Defendant required Technicians to begin their workday by driving their personal vehicles to Defendant's Carey, North Carolina location to check-out the tools and testing equipment that the Technician would use at the customer's place of business. Upon arriving at Defendant's location, Technicians were required to disengage Defendant's security system. Defendant does not permit Technicians to transport tools and testing equipment to the airport in their personal vehicles. Instead, Defendant required Technicians to transport the tools and testing equipment in a company-owned vehicle, which Technicians were required to load on the day of travel prior to traveling to the airport. After loading the tools and testing equipment in the company-owned vehicle, Technicians were required to reengage Defendant's security system and drive to the airport.

20. Upon arriving at the airport, Defendant permitted Technicians to check some tools and testing equipment as luggage, but required Technicians to personally transport other testing equipment, which was required to always remain in Technicians' possession and control while traveling.

21. On the days Technicians returned to North Carolina from a customer's location, Defendant typically scheduled Technicians to return to Raleigh-Durham International Airport on the earliest outbound flight available. On the day of departure, Technicians were required to return a rental car and transport Defendant's tools and testing equipment to the airport. Upon arriving at the departure airport, Technicians were permitted to check certain tools and testing equipment as

4

luggage, but required to personally transport other testing equipment, which was required to always remain in Technicians' possession and control while traveling. Technicians then proceeded to the airport gate for boarding their return flights.

22. Pursuant to Defendant's uniform policies and procedures, on days Technicians traveled to customer locations, Defendant began paying Technicians at the scheduled flight's departure time. On days Technicians returned to North Carolina from customer's locations, Defendant began paying Technicians at the scheduled flight's departure time. Defendant did not compensate Technicians for the work they performed prior to a flight's departure to a customer's location or prior to a flight's departure for the return trip to North Carolina.

23. On days Technicians travelled to customer's locations, Defendant failed to pay Technicians for 2 or more hours of work performed prior to flight departure. On days Technicians travelled from customer locations, Defendant failed to pay Technicians for approximately 2 or more hours of work performed before flight departure.

24. Henkel worked more than 40 hours in a workweek during one or more weeks of her employment with Defendant and she was not paid for all overtime hours worked. Since November 2020, Defendant required Henkel to travel to customer locations at least 40 times. During each week Henkel traveled, Defendant failed to compensate her for 4–5 overtime hours.

25. Defendant requires the members of the Collective to travel to and from customer's locations. The members of the Collective are subject to the same unpaid pre-departure and post-arrival work duties that result in the failure to pay overtime.

26. Defendant determined and controlled the schedules worked by Technicians, the total number of hours worked by Technicians, as well as the compensation paid to Technicians.

27. Defendant knew, and was aware at all times, that Henkel and the Collective were not paid for all overtime hours worked because Defendant controlled Technicians' travel times and Defendant established and enforced the pre-departure and post-arrival job duties performed by Technicians when they travelled to and from customer locations.

28. The conduct alleged above reduced Defendant's labor and payroll costs.

29. Henkel and the Collective were subject to Defendant's uniform policies and practices and were victims of Defendant's scheme to deprive them of overtime compensation. As a result of Defendant's improper and willful failure to pay Henkel and the Collective in accordance with the requirements of the FLSA, Henkel and the Collective suffered lost wages and other related damages.

## **DEFENDANT WILLFULLY VIOLATED THE FLSA**

30. Defendant has no legitimate basis to believe Henkel and the Collective were exempt from the overtime requirements of the FLSA. Instead, Defendant either knew or acted with reckless disregard of clearly applicable FLSA provisions in failing to pay Henkel and the Collective overtime compensation for all overtime hours worked. Defendant's willful actions and/or willful failures to act, included, but were not necessarily limited to:

   a. Defendant maintained or should have maintained accurate payroll and time keeping records that reflected that Henkel and the Collective did, in fact, regularly work overtime hours and therefore, Defendant had actual or constructive knowledge that Henkel and the Collective worked more overtime hours than they were compensated for;

b. Defendant knew or should have known that it did not pay Henkel and the Collective one and one half (1½) times their regular rate of pay for all overtime hours worked;

c. Defendant lacked any good-faith basis to believe that it was lawfully permitted to fail to pay Technicians for compensable work it controlled and directed; and

d. Defendant was aware that it would (and did) benefit financially by failing to pay Technicians overtime premium pay for all overtime hours worked, thereby reducing labor and payroll costs.

## FLSA COLLECTIVE ACTION ALLEGATIONS

31. Henkel brings this collective action on behalf of herself and all others similarly situated pursuant to 29 U.S.C. § 216(b) to recover unpaid overtime wages, liquidated damages, and other damages related to Defendant's violation of the FLSA.

32. Henkel pursues the requested relief on behalf of the following individuals ("the Collective"):

> **All individuals who currently work, or have worked, for Defendant as Pipette Calibration Service Technicians at Defendant's Carey, North Carolina location at any time within the preceding 3-years from the date of filing the complaint.**

33. Henkel is a member of the Collective that she seeks to represent because she was employed by Defendant during the relevant period, routinely suffered or was permitted to work more than 40 hours per week, as described above, and was not paid at the FLSA's mandated overtime premium rate for all time she worked over 40 hours per workweek.

34. Defendant engaged in common schemes to avoid paying Henkel and the Collective overtime pay when they worked in excess of 40 hours per week by failing to pay them overtime

7

Case 5:23-cv-00653-FL   Document 1   Filed 11/14/23   Page 7 of 11

wages for pre-departure and post-arrival job duties performed by Technicians when they travelled to and from customer locations.

35. Henkel and the Collective are similarly situated and this action may be properly maintained as a collective because:

   a. Henkel and the Collective were all paid under the same compensation structure;

   b. Henkel and the Collective performed similar job duties and utilized the same tools and testing equipment to perform their job duties;

   c. Henkel and the Collective were subject to the same work rules, policies, and procedures regarding travel and transportation of company-owned tools and testing equipment;

   d. Henkel and the Collective worked in excess of 40 hours per week during one or more workweeks while employed by Defendant without being paid for all overtime hours worked; and

   e. Defendant maintained common timekeeping and payroll systems and policies with respect to Henkel and the Collective.

36. Defendant encouraged, suffered, and permitted Henkel and the Collective to work more than forty (40) hours per week without proper overtime compensation.

37. Defendant knew that Henkel and the Collective performed work that required additional overtime compensation to be paid. Nonetheless, Defendant operated under a scheme, as previously described, to deprive Henkel and the Collective of overtime compensation.

38. Defendant's conduct as alleged herein was willful and caused damage to Henkel and the Collective.

39. Defendant is liable under the FLSA for failing to properly pay Henkel and the Collective overtime wages. Henkel requests that the Court authorize notice to the members of the Collective to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking unpaid overtime compensation, liquidated damages under FLSA, and the other relief requested herein.

40. Henkel estimates that the collective, including both current and former employees over the relevant period, will include more than 14 members. The precise number of collective members should be readily available from Defendant's personnel, scheduling, time, and payroll records as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the Collective, its members may be informed of the pendency of this action directly via U.S. mail and e-mail.

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA FOR ALL OVERTIME HOURS WORKED**

41. Henkel realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

42. Defendant operates an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

43. Henkel and the Collective are similarly-situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

44. FLSA Section 207(a)(1) states that an employee must be paid an overtime rate, equal to at least 1½ times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

45. Throughout the relevant period, Defendant violated the FLSA by routinely suffering or permitting Henkel and the Collective to work overtime hours each week without paying them premium overtime pay at the correct overtime pay rate and for the actual number of overtime hours worked.

46. Throughout the relevant period, Henkel and the Collective each worked in excess of 40 hours per week during one or more workweeks but were not paid an overtime premium of 1½ times their regular hourly rate for all of those additional hours.

47. Defendant's actions described in this Complaint violated the FLSA.

48. Defendant's actions were willful and not in good faith.

49. Henkel and the Collective have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of overtime wages owed for time worked in excess of 40 hours per week from which Defendant derived a direct and substantial benefit.

50. Defendant is liable to Henkel and the Collective for actual damages, liquidated damages, and equitable relief pursuant to 29 U.S.C. § 216(b) as well as reasonable attorneys' fees, costs, and expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Henkel, individually and on behalf of all others similarly situated, by and through their attorneys, demand judgment against Defendant, jointly and severally, and in favor of Henkel and all others similarly situated, for a sum that will properly, adequately, and completely compensate Henkel and all others similarly situated for the nature, extent and duration of their damages, the costs of this action and as follows:

A. Order the Defendant to file with this Court and furnish to counsel a list of all names, telephone numbers, e-mail addresses and home addresses of all Associates who have worked for the Defendant within the last three years;

B. Authorize Henkel's counsel to issue notice via U.S. Mail and e-mail at the earliest possible time to all Associates who worked for the Defendant within the last three years, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they were deprived of overtime compensation, as required by the FLSA;

C. Certify Henkel's FLSA claims as a collective action;

D. Declare and find that the Defendant committed one or more of the following acts:

   i. Violated provisions of the FLSA by failing to pay overtime wages to Henkel and similarly-situated persons who opt-in to this action;

   ii. Willfully violated provisions of the FLSA;

E. Award compensatory damages, including all overtime pay owed, in an amount according to proof;

F. Award liquidated damages on all compensation due accruing from the date such amounts were due;

G. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

H. Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

I. For such further relief as the Court deems just and equitable.

Dated: November 14, 2023

Respectfully Submitted,

s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Ste. 325
Charlotte, NC 28277
Telephone: 704-612-0038
Email: phil@gibbonslg.com
         corey@gibbonslg.com

*Attorneys for Plaintiff*